IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FAITH DONCHEVA,<br><br>            Plaintiff,<br><br>    v.<br><br>CITIZENS BANK, et al.,<br><br>            Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>    Civil Action No.<br>    18-3294 (JBS/JS)<br><br>    **MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

In this action, Plaintiff Faith Doncheva alleges that
Defendants Citizens Bank, Nations Default Services, Inc.
("NDS"), Udren Law Offices ("Udren Law"), and ABC Corps. I-X
(collectively, "Defendants") illegally used false, deceptive,
and/or misleading representations or means to collect a
purported debt owed. [Docket Item 1.] Defendants filed the
instant motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).
[Docket Items 13, 16, and 19.] Plaintiff requested, and was
granted, extensions of time to reply to the motions to dismiss
[Docket Items 18 & 20], but no opposition was filed. For the
reasons discussed below, Defendants' unopposed motions to
dismiss will be granted. The Court finds as follows:

1. **Factual and Procedural Background.**[1] On June 18, 2003, Plaintiff executed a Note in favor of Citizens Bank of Pennsylvania n/k/a Citizens Bank, N.A. ("Citizens Bank") in the amount of $98,400.00 for a property located at 709 Hessian Avenue in National Park, New Jersey 08063. [Docket Item 1 at ¶ 11; see also Docket Item 17-1 at ¶ 1.] To secure the Note, Plaintiff executed and delivered a mortgage to Citizens Bank on June 23, 2003, which was recorded in the office of the Clerk of Gloucester County on July 2, 2003. [Docket Item 1 at ¶ 11; see also Docket Item 17-1 at ¶ 2.] On January 24, 2015, she executed a second Note concerning the property in favor of Citizens Bank for $40,000.00, and executed and delivered another mortgage

---

[1] The facts alleged are drawn from the Complaint, from public court documents, and from undisputedly authentic documents upon which Plaintiff explicitly relies in his Complaint. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Because the Complaint is predicated upon the mortgage documents, correspondence between Defendants and Plaintiff regarding the mortgage, and the foreclosure actions in state court, documents related to these matters submitted by both Plaintiff and Defendants will be considered in connection with the pending motions to dismiss. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); see also Farah v. Lasalle Bank Nat'l Ass'n, No. 15-2602, 2016 WL 1162644, at *5-6 (D.N.J. Mar. 23, 2016) (stating that "records of the foreclosure action that are intrinsic to the complaint may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment") (citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)).

against the property to Citizens Bank, which was recorded in the office of the Clerk of Gloucester County on February 22, 2005. [Docket Item 1 at ¶ 12; see also Docket Item 17-1 at ¶ 2.]

2.     As of January 28, 2010, Plaintiff defaulted on her loan obligations. [Id. at ¶ 8.] On June 21, 2010, Citizens Bank filed a complaint against Plaintiff seeking to foreclose on the first mortgage loan in the New Jersey Superior Court, Chancery Division, Gloucester County, Docket No. F-32824-10. [Docket Item 1 at ¶ 11.] Citizens Bank filed another complaint against Plaintiff seeking to foreclose on the second mortgage loan on October 1, 2012, Docket No. F-21911-12. [Id. at ¶ 12.] Citizens Bank filed an amended complaint in the second case on October 22, 2013. [Docket Item 17-1.] On November 24, 2014, the Superior Court entered final judgment in favor of Citizens Bank in the sum of $125,817.83. [Docket Item 17-2.]

3.     The property was originally scheduled for sheriff's sale on June 17, 2015. [Docket Item 1 at ¶ 13.] One month before the sale was to take place, Plaintiff called Defendant NDS to request mortgage assistance and, in response, NDS sent Plaintiff a loss mitigation package via email. [Id. at ¶¶ 14-15.] Plaintiff faxed the completed loss mitigation package back to NDS on or prior to June 9, 2015, and, on June 16, 2015, the Gloucester County Sheriff's Office adjourned the sale of the property to July 1, 2015. [Id. at ¶¶ 16, 20.] On or about June

23, 2015, an attorney from Defendant Udren Law informed Plaintiff "that the loans were charged off, the file was closed and that a Sheriff's Sale would not take place" [Docket Item 1-2 at 10] and asked the Gloucester County Sheriff, by letter, to cancel the sheriff's sale scheduled for July 1, 2015 and "return the Writ unsatisfied." [Docket Item 1-2 at 20.] On June 30, 2015, Citizens Bank requested the Gloucester County Sheriff's Office to advise it of the next available sale date. [Docket Item 1-2 at 23.] The property was subsequently sold at sheriff's sale back to Citizens Bank on April 27, 2016. [Docket Item 17-3.]

4.    On April 12, 2017 Plaintiff electronically mailed and sent via facsimile a letter to "Eddie" in the Citizens Bank Asset Recovery Department, which memorialized an oral settlement agreement she had apparently negotiated with him during the prior week. [Docket Item 1-2 at 31.] According to the letter, Citizens Bank agreed to settle the first loan for $19,807.74 and the second loan for $2,064.00. [Id.] Plaintiff then retained an attorney, Joshua Denbaux, Esq., to represent her in this matter. [Docket Item 1 at 36.] On April 24, 2017, David Braz of Citizens Bank faxed Plaintiff and her attorney a "Settlement Proposal," which confirmed that "Citizens Bank would accept $19,807.74 [plus $2,064.00 for the second mortgage] as settled in full." [Id.] Alexa Calligano from the Citizens Bank Asset Recovery

Department subsequently mailed letters to Plaintiff and Plaintiff's counsel confirming that Citizens Bank would accept a minimum of $19,807.74 for the first mortgage and $2,064.00 for the second mortgage "to settle in full on the outstanding balance," and further stated: "This offer is only valid if the entire payment is received by May 25, 2017. If the payment is received after this date or if the payment subsequently does not clear, this letter will be considered null and void." [Docket Item 1-2 at 40-44.] As discussed in more detail below, a state court judge later determined that these letters from Citizens Bank were sent in error.

5. On May 8, 2017, Plaintiff mailed two checks to Citizens Bank, one for $19,807.74 and one $2,064.00. [Docket Item 1 at ¶ 41.] By way of a letter dated May 12, 2017 and received by Plaintiff's attorney on May 15, 2017, an attorney from Defendant Udren Law, on behalf of Citizens Bank, rejected Plaintiff's effort to settle because one of the checks was "unsigned." [Id. at ¶ 42 (emphasis in original); see also Docket Item 1-2 at 46.] Plaintiff then mailed another set of checks to Citizens Bank [Docket Item 1 at ¶ 43], which Defendant Udren Law again rejected because Plaintiff had not completed the legal line on one of the checks. [Id. at ¶ 44; see also Docket Item 1-2 at 74.] On May 22, 2017, Defendant Udren sent Plaintiff's attorney a letter stating, in relevant part, "[a]ny offers

contained in the letter of April 25, 2017 from Citizens Bank are hereby revoked." [Docket Item 1 at ¶ 45; see also Docket Item 1-2 at 73.]

6.     Plaintiff filed an Application for Stay of Eviction and for Enforcement of Alleged Settlement in New Jersey Superior Court, Chancery Division, Gloucester County, Docket No. F-21911-12. [Docket Item 1 at ¶ 49.] On July 11, 2017, Judge Anne McDonnell entered a "final order," finding "that the offers to settle made by employees of [Citizens Bank] by letter dated April 25, 2017 were issued under the mistaken belief that the loans represented thereby were not the subject of a final judgment of foreclosure entered on November 24, 2014 and a Sheriff's Deed given to [Citizens Bank] on April 27, 2016 and recorded on May 31, 2016," denying enforcement of the April 25, 2017 settlement with prejudice, and ordering that the eviction date remain July 14, 2017. [Docket Item 17-9 at 1.] On December 1, 2017, Judge McDonnell granted Citizen Bank's Cross-Motion to confirm the entry of judgment entered on November 24, 2014, and ordered that "Final Judgment in Foreclosure entered on November 24, 2014 is hereby confirmed nunc pro tunc in all respects." [Id. at 2-3.]

7.     According to the Complaint, the enforceability of the April 25, 2017 settlement agreement is pending on appeal in the New Jersey Appellate Division under Docket Number A-004909-16,

while a separate appeal concerning Judge McDonnell's December 1, 2017 Order is pending under Appellate Docket Number A-002371-17. [Docket Item 1 at ¶ 52-53; see also Docket Item 17-4.]

8.   On March 7, Plaintiff filed the Complaint in the instant action alleging: (1) Defendants Citizens Bank and NDS violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; (2) Defendants Citizen Bank and Udren Law violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; (3) all Defendants violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq.; and (4) all Defendants violated the Truth-In-Consumer Contract, Warranty, and Notice Act ("TICCWNA"), N.J.S.A. § 56:12-14 et seq. [Id. at ¶¶ 55-99.]

9.   Defendants filed the instant motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Items 13, 16, and 19.] Plaintiff requested, and was granted, extensions of time to reply to the motions to dismiss [Docket Items 18 & 20], but no opposition was filed. The unopposed dismissal motions are ripe for disposition, and will be decided without oral argument pursuant to Fed. R. Civ. P. 78.

10.  **Standard of Review**. Under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the Complaint, the plaintiff may be entitled to relief." <u>Fleisher v. Standard Ins. Co.</u>, 679 F.3d 116, 120 (3d Cir. 2012) (internal citations omitted).

11. Because Plaintiff asserts claim under RESPA and the FDCPA, both federal statutes, the Court exercises jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a), as well as 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

12. **Discussion**. Defendants argues that Plaintiff's claims should be dismissed for several reasons: (1) Plaintiff's claims are barred by New Jersey's entire controversy doctrine; (2) Plaintiff's claims involving the April 25, 2017 settlement offers are barred by collateral estoppel; and (3) Plaintiff's claims are legally insufficient as a matter of law. For the reasons explained herein, the Court finds that the entire controversy doctrine applies to all claims in this federal action and will, therefore, dismiss the Complaint in its entirety. Since Plaintiff's claims cannot proceed on this basis, the Court declines to reach Defendants' other arguments for dismissal.

13. <u>Entire Controversy Doctrine</u>. The entire controversy doctrine, codified in Rule 4:30A of the New Jersey Court Rules, "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one

8

court." <u>Cogdell v. Hosp. Ctr. at Orange</u>, 560 A.2d 1169, 1172 (N.J. 1989). The doctrine requires litigants to assert all affirmative claims relating to the controversy between them in one action, and to join all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts. <u>See</u> <u>Paramount Aviation Corp. v. Agusta</u>, 178 F.3d 132 (3d Cir. 1999) (New Jersey's entire controversy doctrine "requires adversaries to join all possible claims stemming from an event or series of events in one suit."). The doctrine applies in federal courts where there was a previous state-court action involving the same transaction. <u>See</u> <u>Rycoline Prods., Inc. v. C & W Unlimited</u>, 109 F.3d 883, 887 (3d Cir. 1997).

14. The application of the entire controversy doctrine turns on three criteria: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." <u>Watkins v. Resorts Int'l Hotel and Casino, Inc.</u>, 591 A.2d 592, 599 (N.J. 1991)). "It is [a] commonality of facts, rather than the commonality of issues, parties or remedies that defines the scope of the controversy and implicates the joinder requirements of the entire controversy

doctrine." <u>DiTrolio v. Antiles</u>, 662 A.2d 494, 504 (N.J. 1995).
Importantly, the doctrine "bars not only claims that were
brought in the previous action, but also claims that could have
been brought." <u>In re Mullarkey</u>, 536 F.3d 215, 225 (3d Cir.
2008). The New Jersey entire controversy doctrine is intended to
preclude a party from "withhold[ing] part of a controversy for
separate litigation even when the withheld component is a
separate and independently cognizable cause of action." <u>Maertin</u>
<u>v. Armstrong World Indus. Inc.</u>, 241 F. Supp. 2d 434, 456 (D.N.J.
2002) (quoting <u>Paramount Aviation</u>, 178 F.3d at 137).

    15.  With respect to foreclosure actions, specifically, the
entire controversy doctrine requires that all "germane" claims
must be joined in the first action or they are forever barred.
N.J. Ct. R. 4:64-5. "The use of the word 'germane' in the
language of the rule undoubtedly was intended to limit
counterclaims in foreclosure actions to claims arising out of
the mortgage transaction which is the subject matter of the
foreclosure action." <u>In re Mullarkey</u>, 536 F.3d at 229. In other
words, any claim challenging the foreclosure-plaintiff's "right
to foreclose" is "germane" to a foreclosure action and must be
raised there. <u>Sun NLF Ltd. v. Sasso</u>, 713 A.2d 538, 540 (N.J.
App. Div. 1988). Thus, New Jersey Rule 4:65-5 and the entire
controversy doctrine encompass all statutory, common law, and
constitutional claims relating to a foreclosure action and the

underlying mortgage or tax transaction that led to the foreclosure. <u>Bembry v. Twp. of Mullica</u>, 2017 WL 3033126, at *3 (D.N.J. July 17, 2017).

16. The entire controversy doctrine bars Plaintiff's claims against Defendants Citizens Bank, Udren Law, and NDS because the same set of facts form the basis of her claims both in this Court and in the underlying foreclosure action, including Defendants' action to confirm the earlier foreclosure judgment, and because the crux of her claims in both cases assert impropriety and misrepresentation with respect to the foreclosure action, Docket No. F-21911-12, and enforcement of a settlement agreement purportedly reached between Plaintiff and Defendants Citizens Bank and Udren Law on April 25, 2017, which was denied by the Superior Court **with prejudice**. In other words, even if Plaintiff's claims in this action are styled as RESPA, FDCPA, NJCFA, or TICCWNA causes of action, where they were labeled otherwise before the Superior Court, she cannot escape the fact that they share the same essence in both courts: that Defendants allegedly failed to properly review her for a loan modification in 2014, and that her purported settlement agreement with Defendants Citizen Bank and Udren in 2017 should be enforced. Each of the current claims was available and could have been raised by Plaintiff when litigating the foreclosure

case in Superior Court. Thus, Plaintiff's claims are barred by the New Jersey entire controversy doctrine.

17. **Conclusion.** For the foregoing reasons, the Court will grant Defendants' motions to dismiss. A court may deny leave to amend where it is apparent that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." United States ex rel. Schumann v. AstraZeneca Pharma. L.P., 769 F.3d 837, 849 (3d Cir. 2014) (citation omitted). Because the Complaint is legally insufficient, and not merely factually insufficient, any amendment would be futile. Accordingly, dismissal will be with prejudice. An accompanying Order shall be entered.


**December 7, 2018**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        U.S. District Judge